OCT 14 2009

1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

9  JONATHAN MEDRANO-ALFARO,                3:07-CV-00360-RCJ-VPC

10             Plaintiff,

11        vs.                                        **ORDER**

12  NEVADA SYSTEM OF HIGHER
   EDUCATION, a state entity,
13
             Defendant.
14

15

16        This matter comes before the Court on Defendant's Motion for Summary Judgment

17  (#22).  The Court has considered the Motion, the pleadings on file and oral argument on

   behalf of all parties.
18

                              **I. BACKGROUND**
19

20        This matter arises out of an employment dispute.  Plaintiff was a Custodial Worker at

   the University of Nevada, Reno ("UNR") in the Buildings and Grounds Department from
21
   January 1990 until October 2006.  In May 2001, Plaintiff was promoted to Custodial Worker
22
   II.  (Motion (#22), p. 2).  During Plaintiff's tenure at UNR, he had several documented
23
   instances of discipline.  For example, in August 1993, Plaintiff was given an official verbal
24
   warning for incompetence, inefficiency and inexcusable neglect of duty.  Id.  More recently,
25
   in 2005, Plaintiff received a letter of instruction directing him to: (1) not discuss with his
26
   supervisees the disagreements he has with his supervisor; (2) contact his main supervisor,
27
   Carol Cude, to report completion of assignments; (3) inform Cude each time he altered his
28

1

1  lunch hour; (4) completely fill out his status sheets; and (5) take any issues to Cude rather
2  than Ray Bretz (a supervisor with whom Plaintiff apparently had several disagreements). Id.
3  at 3.

4       In early 2005, Plaintiff applied for two supervisor positions, one at UNR Buildings and
5  Grounds and one at Lawlor Events Center. Id. On February 15, 2006, Plaintiff interviewed
6  for the Custodial Supervisor II position at Lawlor Events Center. Id. On February 16, 2005,
7  Plaintiff also interviewed for the Custodial Supervisor II position at UNR Buildings and
8  Grounds. Id. at 4. Plaintiff was not selected for either position. Id. The successful candidate
9  for the Custodial Supervisor II position at Buildings and Grounds was John Eberhard, a man
10 of apparently Caucasian descent. Id.

11      On March 21, 2006, Plaintiff filed a complaint with UNR's Affirmative Action Office. Id.
12 The Affirmative Action Office undertook an investigation into the Buildings and Grounds
13 Department's failure to hire Plaintiff for the supervisor position. This investigation revealed
14 that the hiring determination was based on the candidates' scores from an oral interview. Id.
15 The successful candidate received a score of 98 while Plaintiff received a score of 95. Id.
16 Based on these findings, the Affirmative Action Office concluded that "there was no
17 reasonable cause to believe that the process used to hire the Custodial Supervisor II was
18 discriminatory." Id. at 5. Plaintiff was informed of the results of this investigation on May 3,
19 2006. Id.

20      After the investigation concluded, there were several documented instances of
21 complaints made regarding Plaintiff's work conduct and behavior. Id. at 6. In early June of
22 2006, several of Plaintiff's coworkers reported that Plaintiff had called his supervisors names,
23 that he had intentionally disobeyed his supervisors, that he was going to get one supervisor,
24 Raymond Bretz, that he was going to give Mr. Bretz a heart attack if he could, and that Plaintiff
25 had been making sexually explicit remarks in the work place. Id. at 6. Shortly thereafter, in
26 July 2006, Plaintiff was placed on administrative leave. Id.

27      On July 20, 2006, Plaintiff filed a second complaint with the Affirmative Action Office.
28 Id. at 7. In this second complaint, Plaintiff alleged that he was placed on administrative leave

1   in retaliation for his first complaint of discrimination. Id. Subsequently, Plaintiff was taken off
2   administrative leave on August 4, 2006. Id. In October of 2006, the Affirmative Action Office
3   completed its investigation into Plaintiff's claims and concluded that there was no reasonable
4   cause to believe Plaintiff had suffered discrimination because of his national origin or
5   retaliation for filing the discrimination complaint. Id. at 7-8. Specifically, the investigators
6   found that Plaintiff had admitted to making sexual remarks on the job, using profanity, and
7   stating that he wanted to cause Mr. Bretz to have a heart attack. Id. In addition, the
8   investigator found that there were several documented instances of Plaintiff's insubordination
9   and failure to follow instructions, and that several disciplinary memos were placed in Plaintiff's
10  file. Id.

11      On October 26, 2006, shortly after Plaintiff was informed of the investigator's findings,
12  he resigned from his position at UNR.  Plaintiff timely filed a charge with the U.S. Equal
13  Opportunity Employment Commission. On June 18, 2007, the EEOC closed Plaintiff's file,
14  adopted the findings of UNR's Affirmative Action Office, and issued Plaintiff a right to sue
15  letter. Id. Plaintiff then filed his complaint in this Court on August 12, 2007, asserting claims
16  of discrimination and retaliation under 42 U.S.C. §1981 and Title VII of the Civil Rights Act of
17  1964.[1]

18                                  **II. LEGAL STANDARD**

19      Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers
20  to interrogatories, and admissions on file, together with the affidavits, if any, show that there
21  is no genuine issue as to any material fact and that the moving party is entitled to judgment
22  as a matter of law." FED. R. CIV. P. 56(c).  The burden of demonstrating the absence of a
23  genuine issue of material fact lies with the moving party, and for this purpose, the material
24  lodged by the moving party must be viewed in the light most favorable to the nonmoving party.
25  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141

26

27      [1] The Court will not consider Plaintiff's constructive discharge claim, first raised at oral
28  argument, because Plaintiff did not assert that claim in his Complaint or raise that claim in his
    Opposition.

                                        3

1  F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the
2  litigation and requires a trial to resolve the differing versions of the truth. Lynn v. Sheet Metal
3  Workers Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986); S.E.C. v. Seaboard Corp., 677 F.2d
4  1301, 1306 (9th Cir. 1982).

5       If the moving party presents evidence that would call for judgment as a matter of law
6  at trial if left uncontroverted, then the respondent must show by specific facts the existence
7  of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).
8  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party
9  for a jury to return a verdict for that party. If the evidence is merely colorable, or is not
10 significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).
11 "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences
12 of which the evidence is reasonably susceptible; it may not resort to speculation." British
13 Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978); see also Daubert v. Merrell
14 Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes
15 that the scintilla of evidence presented supporting a position is insufficient to allow a
16 reasonable juror to conclude that the position more likely than not is true, the court remains
17 free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-
18 moving party's claim of a disputed fact implausible, then that party must come forward with
19 more persuasive evidence than otherwise would be necessary to show there is a genuine
20 issue for trial." Blue Ridge Insurance Co. v. Stanewich, 142 F.3d 1145, 1149 (9th Cir. 1998)
21 (citing Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466,
22 1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot
23 defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

24                                    III. DISCUSSION

25 **A. Plaintiff's Claim Under §1981**

26      In his Complaint, Plaintiff asserts that he is "entitled to recover all damages available
27 under 42 U.S.C. §1981 against NSHE." However, to the extent that Plaintiff attempts to assert
28 a cause of action against NSHE under §1981, his claim must fail. The Ninth Circuit has

4

clearly held that §1981 does not contain a cause of action against states or arms of the state. Pittman v. Or. Employment Dep't, 509 F.3d 1065, 1074 (9th Cir. 2007).[2] The Ninth Circuit has further held that a state university is an "arm of the state." See Armstrong v. Meyers, 964 F.2d 948, 949-50 (9th Cir. 1992). This Court has also recognized that the University of Nevada is an arm of the state. Lucy v. Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ., No. 2:07-CV-00658-RLH-RJJ, 2007 WL 4563466 at *8 (D.Nev. Dec. 18, 2007) (stating "[t]he Nevada university system is an instrumentality of the state..."); Meza v. Lee, 669 F.Supp. 325, 328 (D.Nev. 1987); Johnson v. Univ. of Nev., 596 F.Supp. 175, 178 (D.Nev. 1984). Because NSHE is an arm of the state, Plaintiff cannot assert a cause of action against it under §1981 and therefore summary judgment is appropriate as to this claim.

## B. Plaintiff's Discrimination Claim

In his Complaint, Plaintiff also asserts a cause of action under 42 U.S.C. §2000e-2 for discrimination. (Compl. (#1), ¶9). He alleges that "based upon his race and national origin, he was denied a promotional opportunity." Id. ¶5. Defendant argues that Plaintiff cannot make out a prima facie case of discrimination under this provision because there is undisputed evidence that Plaintiff did not perform his job satisfactorily. (Motion (#22), p. 18). In addition, Defendant argues that there was a legitimate, non-discriminatory reason that Plaintiff was not hired for the supervisory position. Id. Finally, Defendant argues that there is no evidence to suggest Plaintiff was treated differently because of his race or national origin, or that Defendant's proffered reason for its failure to promote Plaintiff is pretextual.

Title VII makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race or national origin. 42 U.S.C. §2000e-2(a)(1). To establish a *prima facie* case

---

[2] In Pittman, the Ninth Circuit noted the distinction between sovereign immunity and the more basic question of whether the language of §1981 creates a private cause of action against state actors. 509 F.3d at 1072. The court examined the language of the statute, and found that "neither the language nor the legislative history of the statute suggests any intent to create a private right of action against arms of the state." Id. at 1073. Significantly, the court affirmed the district court's dismissal of Pittman's §1981 claim even though the state in that case had waived its immunity under the Eleventh Amendment. Id. Hence, the issue of whether Plaintiff's claim under §1981 fails as a matter of law in this case does not involve an inquiry into the State's sovereign immunity or any apparent waiver by NSHE's failure to raise this issue in its motion for summary judgment.

of discrimination under Title VII, a plaintiff must offer proof:

> (1) that the plaintiff belongs to a class of persons protected by Title VII;
>
> (2) that the plaintiff performed his or her job satisfactorily;
>
> (3) that the plaintiff suffered an adverse employment action; and
>
> (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff.

Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973)). On a motion for summary judgment, the degree of proof required for a prima facie case "is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

Establishing a prima facie case under McDonnell Douglas creates a presumption that an employer undertook the challenged employment action because of the plaintiff's race. Cornwell, 439 F.3d at 1028. To rebut this presumption, the employer must produce admissible evidence demonstrating that the employer took the challenged action "for a legitimate, nondiscriminatory reason." Id. If the defendant does so, then the presumption of discrimination "drops out of the picture" and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required in civil cases under Fed.R.Civ.P. 56(c). Id. In the context of employment discrimination law under Title VII, summary judgment is not appropriate if, based on the evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of the plaintiff's race. Id.

## 1. Prima Facie Case

In this case, the parties dispute the second and fourth elements.[3] Defendant contends

---

[3]Defendant contends that Plaintiff cannot establish the fourth element because Plaintiff "has not come forward with any evidence that NSHE discriminated against him because of his race or national origin, or on any basis whatsoever." (Motion (#22), p. 18). However, Ninth Circuit precedent describes the fourth element in terms of either replacement or comparison to similarly situated individuals. For example, in Wallis, an age discrimination case, the Ninth Circuit described the fourth element of a prima facie case under the ADEA (which applies the McDonnell Douglas framework) as "replaced by a substantially younger employee with equal or

that because there are several documented instances of Plaintiff receiving verbal and written warnings, he cannot establish the second element of his prima facie case. (Motion (#22), p. 18).   Defendant insists that Plaintiff was not satisfactorily performing his job based on documentary evidence of verbal and written reprimands and a letter of instruction from Plaintiff's supervisor.  Based on this evidence, Defendant seeks summary judgment on the discrimination claim on the premise that Plaintiff cannot establish that he was satisfactorily performing his job at all times.  Plaintiff responds by stating that "[t]he memos are the only evidence of Plaintiff allegedly not obeying Cude's orders...The write-ups are not signed by Plaintiff."[4] (Opp. (#25), p. 2). Plaintiff also argues, without citing to any evidence, that he "had good evaluations and commendations from his superiors." Id. at 4.

Courts have recognized that while the Plaintiff must prove satisfactory job performance as the second prima facie element in a discrimination case, such proof need not include a flawless personnel file at all times during employment. Bahri v. Home Depot USA, Inc., 242

inferior qualifications."  Wallis, 26 F.3d at 891.  Similarly, in Villiarimo v. Aloha Island Air, Inc., a sex discrimination case, the court described the fourth element as "similarly situated men were treated more favorably, or her position was filled by a man." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002);  see also Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir. 1996) (describing proof of replacement and comparison with similar individuals as alternative ways of making prima facie case).  Hence, Plaintiff in this case may satisfy his prima facie burden with respect to the fourth element by showing that Defendant hired a Caucasian male to replace him.  Because Plaintiff has made such a showing, the Court concludes he has established the fourth element of his prima facie case.

[4]For this proposition, Plaintiff cites to the deposition of Carol Cude at 6:24-7:7.  However, a review of Ms. Cude's deposition indicates that she actually stated the following:

Q: It was your practice to have the employee acknowledge that document?

A: Yes. More or less.

...

Q: Would you have them review it and sign it?

A: No. Not all the time.

Plaintiff's counsel has grossly mischaracterized Ms. Cude's statements.  She clearly stated in her deposition that not all memos to employees regarding counseling sessions were reviewed and signed by the employees.  This is  far different than the statement that the write-ups in this particular case were never signed by Plaintiff. Indeed, a review of Defendant's Exhibit E reveals that Plaintiff did sign the memo outlining his recent problems. Plaintiff's counsel, as an officer of this Court, is advised to review the deposition testimony more carefully before making such representations or to cite to appropriate evidence in the record.

F.Supp.2d 922, 931 (D.Or. 2002). The court in Bahri found that in order to prove the second element in his prima facie case, the plaintiff need only establish satisfactory job performance prior to the introduction of the allegedly unlawful discrimination. Id. Given the fact that the Supreme Court and the Ninth Circuit have indicated that the prima facie proof required in a discrimination case may vary in differing factual situations, and that the McDonnell Douglas approach is to be applied flexibly, this Court finds that two negative job performance incidents in 1993, well before the alleged discrimination occurred in this case, are not relevant. See McDonnell Douglas, 411 U.S. at 802; Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 550 (9th Cir. 1982). Plaintiff's claims of discrimination in this case are limited to events that occurred from the fall of 2005 (when Plaintiff applied for the supervisor position) until October 2006 (when Plaintiff resigned from his employment). Therefore, evidence of Plaintiff's job performance at or near that period of time would be most relevant to his prima facie case.

In addition to Plaintiff's negative performance evaluations from 1993, Defendant has submitted a memo from Plaintiff's personnel file dated September 26, 2005. That memo clearly indicates that Plaintiff had not been meeting several expectations in his job performance. (Motion (#22), Ex. E). For example, Plaintiff had neglected to report to his supervisor when he had finished his assignments, had not informed his supervisor when he altered his lunch hour, was not properly filling out his status sheets, and had not consistently accompanied his crew when they went out on a job together. Id. Thus, Defendant has provided evidence of Plaintiff's poor work performance during the months just before Plaintiff applied for and was rejected from the supervisor position.

In response, Plaintiff simply asserts that "[a] 2005 letter of instruction does not equate to unsatisfactory job performance." (Opp. (#25), p. 5). On the contrary, the letter details several areas where Plaintiff needed improvement and his supervisor's efforts to address several problems with Plaintiff. In addition, Plaintiff asserts generally that he "had good evaluations and commendations from his superiors." Id. at 4. More specifically, Plaintiff points to the deposition of Ms. Cude, in which she stated that Plaintiff had positive

performance evaluations in early 2006. Id. at 3. Viewing this evidence in the light most favorable to Plaintiff, the Court concludes that he has established a prima facie case of discrimination under 42 U.S.C. §2000e-2 for purposes of summary judgment. Accordingly, the Court now turns to Defendant's proffered nondiscriminatory reason and evidence of pretext.

### 2. Legitimate, Nondiscriminatory Reason and Evidence of Pretext

Defendant has presented evidence that Plaintiff was not hired for the supervisor position in the Buildings and Grounds Department because he did not score as well as another candidate on the interview portion. Specifically, Defendant presents evidence that the successful candidate scored a 98 on the interview score sheet, while Plaintiff scored a 95. (Motion (#22), Ex. N). A review of the interview score sheets reveals that the interviewers rated the candidates' answers to questions regarding good leadership characteristics, work habits, required record-keeping, and problem solving. Id. The Court concludes that these are legitimate criteria upon which an employer may evaluate potential candidates, and therefore the Court finds that Defendant has established a legitimate, nondiscriminatory reason for its failure to hire Plaintiff for the supervisor position. See Shah v. Kern County, 232 F.3d 896, 896 (9th Cir. 2000) (finding the fact that other applicants scored higher than the plaintiff on oral interviews legitimate nondiscriminatory reason for choosing not to hire plaintiff).

Because Defendant offers a legitimate nondiscriminatory reason for choosing not to hire Plaintiff for the supervisor position in 2006, the burden shifts back to Plaintiff to show Defendant's proffered reason for its hiring decision was pretextual. On summary judgment, the plaintiff's burden is "to establish a prima facie case and, once the employer articulate[s] a legitimate, nondiscriminatory reason for its actions, to raise a genuine factual issue as to whether the articulated reason was pretextual." Id. at 896. In response to the defendant's offer of nondiscriminatory reasons, the plaintiff must produce "specific, substantial evidence of pretext." Id. In other words, the plaintiff "must tender a genuine issue of material fact as to pretext in order to avoid summary judgment." Id.

Plaintiff argues that pretext can be established by the following: (1) there were no Hispanic custodial supervisors; (2) the panel only considered the candidates' interview scores

9

in making its hiring determinations rather than experience and education; and (3) Plaintiff was only promoted once in seventeen years "despite the undisputed fact that he got good reviews all of the time." (Opp. (#25), pp. 7-8). However, as Defendant points out, Plaintiff's characterization of the undisputed facts regarding pretext is misleading. Ray Bretz testified that Human Resources would screen applicants based on their education and experience prior to the interview. (Reply (#30), p. 3). In addition, as discussed in the foregoing, it is not "an undisputed fact" that Plaintiff received good reviews "all of the time" during his tenure with the Buildings and Grounds Department. Hence, only two of Plaintiff's arguments remain: (1) that there were no Hispanic custodial supervisors, and (2) that Plaintiff was only promoted once in seventeen years.

The Court concludes that none of Plaintiff's circumstantial evidence is "substantial" enough to sustain a triable issue of fact on the issue of pretext. Defendant hired the applicant who scored higher than Plaintiff on the qualifying interview, and Plaintiff's evidence of pretext does not cast enough doubt on the sincerity of Defendant's proffered reasons for rejecting him in favor of another applicant. Because Plaintiff has raised no genuine factual issue as to whether Defendant's reason for its employment action was pretextual, the Court concludes that summary judgment is appropriate as to Plaintiff's discrimination claim.

**C. Plaintiff's Retaliation Claim**

Plaintiff asserts a cause of action for retaliation under 42 U.S.C. §2000e-3. He alleges that "[f]ollowing the complaints to Affirmative Action and NERC, managerial and supervisory employees Bretz and Cude began to retaliate against Plaintiff based upon his protected activity." (Compl. (#1), ¶7). Defendant argues that summary judgment is appropriate as to the retaliation claim because Plaintiff cannot establish a causal connection between Plaintiff's protected activity and the alleged adverse employment actions of which he complains. (Motion (#22), p. 21). In addition, even if Plaintiff could establish such a causal connection, Plaintiff cannot establish a genuine issue of material fact that Defendant's proffered reasons for its actions regarding Plaintiff were pretextual. Id.

Title VII forbids an employer from discriminating against an employee because that employee has "opposed any practice" made unlawful by Title VII or "made a charge, testified,

assisted or participated in" a Title VII proceeding or investigation. <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 126 S.Ct. 2405 (2006) (citing 42 U.S.C. § 2000e-3(a)). To make a prima facie case of retaliation, Plaintiff must show:

    (1) he engaged in a protected activity;

    (2) his employer subjected him to an adverse employment action; and

    (3) a causal link exists between the protected activity and the adverse action.

<u>Ray v. Henderson,</u> 217 F.3d 1234, 1240 (9th Cir. 2000). If a plaintiff has asserted a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. <u>Id.</u> If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. <u>Id.</u>

**1. Prima Facie Case**

    The parties do not dispute that Plaintiff engaged in protected activities when he filed discrimination complaints with the UNR Affirmative Action Office and the Nevada Equal Rights Commission on March 21 and July 20, 2006 respectively. The parties also do not dispute that Plaintiff was subjected to adverse employment actions when he was placed on administrative leave and sent to undergo a psychological evaluation in July 2006. In addition to these two alleged adverse employment actions, Plaintiff alleges that he was stripped of his supervisory duties, moved to another department, and had his job duties altered.[5] (Opp. (#25), p. 3). Defendant does not appear to dispute that these actions also constitute adverse employment actions for purposes of Plaintiff's retaliation claim, as they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington Northern</u>, 548 U.S. at 54.

    Defendant does dispute the existence of a causal connection between Plaintiff's protected activity and the adverse employment actions. Causation in a Title VII retaliation

---

[5]In addition to the above-listed actions, Plaintiff also contends that Mr. Bretz (a supervisor) "altered Plaintiff's hours to affect his ability to attend a second job." (Opp. (#25), p. 3). For this proposition, Plaintiff cites to several depositions. However, the Court has reviewed these depositions and finds that they provide no support for the proposition that Mr. Bretz altered Plaintiff's hours. Plaintiff's counsel has again misrepresented the contents of these depositions, and the Court strongly cautions Plaintiff's counsel that, as an officer of this Court, he has a duty to more carefully review the evidence to ensure that his representations have evidentiary support.

case may be established based on the timing of the relevant actions; specifically, when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred. Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 507 (9th Cir. 2000); Miller v. Fairchild Industries, Inc., 885 F.2d 498, 505 (9th Cir. 1989) (holding that discharges 42 and 59 days after EEOC hearings were sufficient to establish prima facie case of causation); Yartzoff v. Thomas, 809 F.2d 1371, 1375-76 (9th Cir. 1987) (finding causation based on retaliation that occurred within three months of plaintiff's complaint).

In this case, Plaintiff filed his original complaint with UNR's Affirmative Action office on March 20, 2006. Plaintiff was placed on administrative leave on July 18, 2006, nearly four months later. Plaintiff filed an additional complaint on July 20, 2006 alleging retaliation. On August 4, 2006, Plaintiff was taken off of administrative leave and allowed to return to work. On August 21, 2006, Plaintiff was notified that he was to undergo a psychological evaluation. Plaintiff is unable to provide exact dates for the other adverse employment actions, but he asserts that they took place within weeks of his return from administrative leave. (Opp. (#25), p. 3). Viewing this evidence in the light most favorable to Plaintiff, as the Court is required to do, the Court concludes that the close temporal proximity between Plaintiff's complaints and the subsequent adverse employment actions are sufficient to establish causation for purposes of Plaintiff's prima facie case. Because Plaintiff has established a prima facie case, the Court now turns to Defendant's nondiscriminatory reasons and evidence of pretext.

### 2. Legitimate, Nondiscriminatory Reason and Evidence of Pretext

Defendant has presented evidence that the various adverse employment actions, including placing Plaintiff on administrative leave, requiring Plaintiff to undergo a psychological evaluation, and altering Plaintiff's job duties, were all done in response to Plaintiff's inappropriate behavior at the workplace. Defendant alleges that Plaintiff's behavior at work began to change drastically after May 2006, when the Affirmative Action Office issued its finding that there was no evidence that Plaintiff had been denied the promotion to custodial supervisor due to his race or national origin. (Motion (#22), p. 5). Subsequently, in June 2006, Plaintiff's coworkers began to complain that Plaintiff was making threats against Mr.

Bretz, and that he had made sexually inappropriate comments in the workplace. Id. at 6.  In addition, Plaintiff was allegedly not following directions from management. Plaintiff's superiors felt that Plaintiff's behavior could create a potentially hostile work environment, and therefore he was placed on administrative leave. Id., Ex. Y. The Court concludes that insubordination, threats, and inappropriate workplace behavior are legitimate nondiscriminatory reasons an employee may be placed on administrative leave, transferred, or ordered to undergo a psychological evaluation. Therefore, because Defendant has met its burden on this element, the presumption of unlawful discrimination "drops out of the picture" and Plaintiff must show that Defendant's explanation is pretextual. Cornwell, 439 F.3d at 1028.

To avoid summary judgment, Plaintiff must show that based on all the evidence, a rational trier of fact could find that Defendant's explanation is pretextual and therefore, that it placed Plaintiff on administrative leave, changed his duties, and ordered a psychological evaluation in retaliation for his two discrimination complaints.  In an attempt to establish pretext, Plaintiff presents a series of conclusory allegations that are unsupported by the record. He states flatly that "Plaintiff had not threatened Bretz." (Opp. (#25), p. 9).  He attempts to establish that any threatening statement Plaintiff may have made was minimal because Mr. Bretz admitted he was not scared, "only leery." Id. Plaintiff proposes that "a juror could infer Bretz worked Plaintiff's crew into spinning the comment about filing a complaint into a threat...to redirect the investigation away from Bretz" because Plaintiff's coworkers made their complaints directly to Mr. Bretz and not through the chain of command, i.e. to Ms. Cude. Id.  However, Plaintiff has presented only conclusory allegations and has not pointed the Court to specific facts from the record to support his allegations.  Conclusory allegations as to ultimate facts are not adequate to defeat summary judgment. Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1180 (9th Cir. 2002).[6] Because Plaintiff has not presented any evidence from which a rational trier of fact could find that Defendant's explanation is pretextual, Defendant's motion for summary judgment is also granted as to Plaintiff's retaliation claim.

---

[6]In addition, the Court is not required to "scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  Rather, the Court "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).

**IV. Conclusion**

Based on the foregoing, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#22) is GRANTED in its entirety.

The Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiff accordingly.

DATED: This 14th day of October, 2009.

_____

UNITED STATES DISTRICT JUDGE

14